# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN – SOUTHERN DIVISION

MARK BUTLER,                                                       Case No.

       Plaintiff,                                            Honorable

v.

GLENCOE CAPITAL MICHIGAN, LLC;
CAMPBELL GRINDER COMPANY;
CAMPBELL GRINDER GC COMPANY;
CAMPBELL GRINDER GC HOLDINGS, LLC; and
DOUGLAS S. KEARNEY,

       Defendants.
_____/

Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW, COOPER & ANDING
Attorneys for Plaintiff
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan  49503
Phone: (616) 454-8300
E-mail: sdrew@dca-lawyers.com
E-mail: asturdivant@dca-lawyers.com
_____/

## COMPLAINT AND JURY DEMAND

      NOW COMES Plaintiff Mark Butler, by and through his attorneys DREW, COOPER & ANDING, and hereby states as follows:

## JURISDICTION AND PARTIES

1. This suit is brought and jurisdiction lies pursuant to §107(a) of the Americans with Disabilities Act (ADA), 42 U.S.C. 12117, which incorporates by reference §706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-5.

2. Plaintiff filed a charge of employment discrimination on the basis of disability with the Equal Employment Opportunity Commission (EEOC) within 300 days of the commission of the unlawful employment practice alleged in this claim.

3. Plaintiff received two EEOC Right to Sue notices dated January 9, 2013 (copies are attached), and Plaintiff has filed this complaint within 90 days of receiving the EEOC Right to Sue notices.

4. Plaintiff is a citizen of the United States and resides in the State of Michigan, and was at all relevant times an employee of Defendant Campbell Grinder Company and Defendant Glencoe Capital Michigan, LLC.

5. All the discriminatory employment practices alleged in this complaint occurred within the State of Michigan.

6. Defendant Glencoe Capital Michigan, LLC is a company with its office and principal place of business in Birmingham, Michigan, and was at all relevant times a duly licensed company conducting business within the Eastern District of the State of Michigan or is otherwise within the jurisdiction of this Court.

7. Defendant Campbell Grinder Company is a corporation with its office and principal place of business in Spring Lake, Michigan and was at all relevant times a duly licensed company conducting business in the State of Michigan or is otherwise within the jurisdiction of this Court.

8. Defendant Campbell Grinder GC Company at all relevant times was a duly licensed corporation qualified to do business in Michigan and conducted business within the United States District Court of the Eastern District of Michigan.

9. Defendant Campbell Grinder GC Holdings, LLC is a company registered in the state of Deleware that at all relevant times was a duly licensed company conducting business within the Eastern District of the State of Michigan or is otherwise within the jurisdiction of this Court.

10. Defendant Douglas S. Kearney is a citizen of the United States and resides in Northville, Michigan, and was at all relevant times an employee and/or representative of Defendant Glencoe Capital Michigan, LLC.

11. All defendants are "persons" within the meaning of §101(7) of the ADA, 42 U.S.C. 12111(7), and §701 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e.

12. All defendants meet all of the requirements for employer status under the ADA. 42 U.S.C. §12115(A)

13. Jurisdiction is founded upon 28 U.S.C. § 1331 and § 1343(a) and the aforementioned statutory and constitutional provisions.  Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 42 U.S.C. § 1367. Venue is proper pursuant to 28 USC § 1391 (b)(1) and (3).

## STATEMENT OF FACTS

14. The above paragraphs are incorporated by reference.

15. On or about October 28, 1998, Plaintiff was hired by Defendant Campbell Grinder Company in the position of Controller.

16. Defendant Campbell Grinder designs, manufactures, sells and distributes large industrial grinding machines.

17. On or about March 10, 2005, Plaintiff was involved in a motor vehicle accident wherein he sustained a traumatic brain injury and other physical injuries including injury to his back, neck, elbows, and eye.

18. As a result of the injuries, Plaintiff requested and required reasonable accommodations to perform the essential functions of his job as Vice President of Finance including, but not limited to, flexible work hours and the ability to leave the office during the workday to take naps.

19. In or around July 2005, Plaintiff returned to work and was granted the requested reasonable accommodations by Defendant Campbell Grinder, which allowed him to perform all essential functions of his job.

20. In or around November 2005, Plaintiff became part-owner of Defendant Campbell Grinder Company and was appointed to the positions of Secretary and Treasurer in addition to President of Finance and Administration.

21. In Plaintiff's new position, he continued to receive the reasonable accommodations previously requested which allowed him to perform all essential functions of his job.

22. On or around December 30, 2010, Defendant Glencoe Capital Michigan, LLC, through Campbell Grinder GC Holdings, LLC, acquired an interest in Campbell Grinder by purchasing stock from Mark Lorencz, Bruce Hammond, and Plaintiff, Mark Butler.

23. Defendant Glencoe Capital is a private equity firm that acquires lower-middle market companies.

24. On or around December 30, 2010, upon Glencoe's acquisition of Campbell Grinder, Plaintiff became Campbell Grinder Company's Secretary and Treasurer pursuant to an Employment Agreement and was required to execute the normal duties, responsibilities and functions of a Secretary and Treasurer including serving on the Board of Managers of Campbell Grinder GC Holdings LLC and Campbell Grinder Company.

25. The Employment Agreement made between Plaintiff Campbell Grinder was for a term of five years and provided a base salary of $189,000.00 per annum, as well as other compensation and benefits.

26. During the course of Plaintiff's employment, he performed the duties of his position as executive officer pursuant to the terms of the employment agreement.

27. In April 2011, Plaintiff informed Defendants in writing of his concerns about failing to receive requested accommodations which allowed him to perform all essential functions of his job.

28. In October 2011, in preparing for an upcoming Board Meeting to address issues related to the sale of Defendant Campbell Grinder to Defendant Glencoe Capital Michigan, LLC, Plaintiff informed Defendants in writing that he was attempting to complete tasks assigned him, but was having difficulty as his requested accommodations were being denied.

29. Following Glencoe's acquisition of Campbell Grinder, Plaintiff was repeatedly refused accommodations for his disabilities including but not limited to flexible work hours to allow for late arrival or the ability to leave during the day to nap, the ability to leave the building to take walks, the purchase of back support for his office chair, and the purchase of special computer accessories.

30. On a number of different occasions, Defendant Douglas S. Kearney made disparaging comments to Plaintiff because of his disability, saying things like: "That's why we don't hire people like you, because they miss too much time;" "I don't care about your issues;" "You can't miss work," "You can't attend your appointments;" and "You need to do whatever it takes and work as many hours as necessary to get the job done,"

31. In or around December 2011 or January 2012, in reviewing financial records in preparation for an upcoming audit, Plaintiff discovered that he, Bruce Hammond, and Mark Lorencz had not been paid the full amount of their base salary wages and needed to issue checks to correct the discrepancy to accurately reflect Defendant's expected 2012 earn-out payment.

32. In or around December 2011 or January 2012 Plaintiff informed Hammond and Lorencz of his concerns, proposed that the discrepancy be corrected by issuing checks to make up the balance and difference in salary, a proposal that Hammond and Lorencz accepted and agreed with.

33. Plaintiff subsequently directed his assistant Michelle Thompson to request three checks, one for himself in the amount of $70,456.08, the second for Bruce Hammond and the third for Mark Lorencz for similar amounts.

34. The checks were drawn and delivered to Hammond, Lorencz and Plaintiff.

35. Lorencz was the only individual to cash his check.

36. On or about January 10, 2012, Plaintiff again informed Defendants in writing that he needed assistance due to his ongoing medical issues related to his disability, but his requests for reasonable accommodation were met with silence.

37. On or about January 16 2012, Plaintiff e-mailed Bruce Hammond inquiring as to why Hammond had not yet cashed his check but received no response.

38. On or around January 19, 2012, Plaintiff was told by Defendants that he was suspended from his position as Secretary and Treasurer pending an investigation for alleged violations of his employment contract.

39. On or around January 23, 2012, following a short investigation of which Plaintiff was neither interviewed or consulted, Plaintiff's employment was terminated without cause for alleged violations of his employment contract.

40. Defendant's conduct as described above constituted a breach of the contract made between Plaintiff and Defendants, including but not limited to Defendants failure to pay Plaintiff's base salary during the severance period as mandated by the terms of the employment agreement.

41. Plaintiff has been damaged by Defendant's breach in the amount of approximately $378,000.00, which represents the amount prescribed by the Employment Agreement.

42. Following Plaintiff's termination, Defendants informed other employees, but not Plaintiff, that Plaintiff was banned from the Campbell Grinder premises preventing him from obtaining his personal effects from his office including but not limited to: Personnel/company documents from previous employers; IMA folder of documents (memberships, CEU certificates); Family and personal tax returns; Personal IRS IDR's/correspondence; Medicines; Medical Records from 1998 to date of termination; Personal/family medical documents/invoices, forms; Employee handbook from CGC and previous employers; Business documents from previous employers; Wife's personal bankruptcy files; Various documents and files on personal laptop including but not

limited to family pictures and videos, wedding photos and invitation lists, health records for children, emails; Resumes, references, recommendation letters; Personally signed agreements between Mark Lorencz, Bruce Hammond, and Mark Butler; Documents relating to sale of business belonging personally to Mark Butler; Box of Catherine Van Dyke's personal credit card invoices, personal documents, letters, family possessions etc.; Pocket calculator; Diplomas, professional certification; Money in desk, jewelry, gift certificates, set of keys; Refrigerator loaned to CGC plant break room; Electric heater; Excel and other application instruction books; Documents from father's service in WWII, and Personal laptop.

43. Plaintiff, however was told that he would be permitted to return to the work site to retrieve his personal belongings, but was never permitted to do so despite repeated requests over a period of several months and has not received all of his property form Defendant to date.

44. Defendants returned a few items to Plaintiff by delivery at his home on March 15, 2012, though the majority of his personal effects were not returned.

45. Defendants refused to return the personal laptop that stored some of private, sensitive, and confidential information and documents referenced above (paragraph 41) despite the fact that in December 2010, around the time of the Glencoe purchase of Campbell Grinder, the computer was given Plaintiff for use solely as his personal computer.

46. Approximately six months following Plaintiff's termination, Plaintiff was able to secure employment with significantly different duties and a significant decrease in pay.

### COUNT I
### DISCRIMINATION
### AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. §12117

47. The above paragraphs are incorporated by reference.

48. At all relevant times, Plaintiff was an individual with a disability within the meaning of §3(2) of the ADA, 42 U.S.C. 12102(1). Specifically, Plaintiff has a physical impairment that substantially limits one or more of his major life activities, has a record of the impairment, and is regarded by Defendants as having the impairment.

49. Plaintiff is a qualified individual as that term is defined in the ADA. 42 U.S.C. 12111(8). Plaintiff is an individual who, with reasonable accommodation, can perform the essential functions of his job as Secretary and Treasurer.

50. In rejection of Plaintiff's request for accommodation, Defendants refused to allow Plaintiff to work flexible hours, etc. and terminated his employment.

51. Defendants failure to make reasonable accommodations for Plaintiff constitutes discrimination against Plaintiff in respect to the terms, conditions, or privileges of employment. This conduct constitutes a violation of the ADA. 42 U.S.C. 1211(b)(5)(A).

52. Defendants have failed to undertake any good-faith efforts, in consultation with Plaintiff, to identify and make a reasonable accommodation for Plaintiff.

53. Defendants conducted themselves with malice or reckless indifference to Plaintiff's federally protected rights.

54. As a direct and proximate result of Defendants' discrimination on the basis of disability Plaintiff has suffered lost wages, benefits and loss of employment opportunities.

55. As a direct and proximate result of Defendants' failure to make reasonable accommodation to Plaintiff, Defendants have caused or continue to cause Plaintiff to suffer substantial damages for pecuniary losses, mental losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## COUNT II
## RETALIATION
## AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. §12117

56. The above paragraphs are incorporated by reference.

57. Defendants, discriminated against Plaintiff in the terms and conditions of his employment, including but not limited to refusing reasonable accommodation requested, and terminating Plaintiff's employment because Plaintiff requested reasonable accommodation.

58. The aforementioned actions deprived Plaintiff of his right to oppose said unlawful practices, in violation of the ADA, 42 U.S.C. 12117.

59. Defendants, through their employees, agents, managers, and/or assigns retaliated against Plaintiff because Plaintiff requested reasonable accommodation for his disability under the ADA, 42 U.S.C. 12117.

60. Defendants conducted themselves with malice or reckless indifference to Plaintiff's federally protected rights.

61. As a direct and proximate result of Defendants' discrimination on the basis of disability, Plaintiff has suffered lost wages, benefits and loss of employment opportunities.

62. As a direct and proximate result of Defendants' failure to make reasonable accommodation to Plaintiff, Defendants have caused or continue to cause Plaintiff to suffer substantial damages for pecuniary losses, mental losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## STATE LAW CLAIMS – SUPPLEMENTAL JURISDICTION

## COUNT III
## DISCRIMINATION
## PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
## MCL 37.1101 ET SEQ.

63. The above paragraphs are incorporated by reference.

64. At all material times, Plaintiff was an employee, and Defendants were his employer, covered by and within the meaning of the Persons with Disabilities Civil Rights Act (PDCRA), MCL 37.1201 et seq.

65. At all relevant times, Plaintiff was an individual with a disability as that term is defined by and within the meaning of the PDCRA, MCL 37.1103(e).

66. Plaintiff was discriminated against, within the meaning of the PDCRA, when Defendants failed to grant him reasonable accommodation and terminated him because of his disability.

67. The actions of Defendants and their agents, representatives, and employees were intentional in disregard for the rights and sensibilities of Plaintiff.

68. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has sustained injuries and damages, including the loss of earnings and earning capacity, loss of fringe and pension benefits; mental and emotional distress, humiliation and embarrassment; loss of career opportunities; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue a gainful occupation of choice.

## COUNT IV
## RETALIATION
## PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
## MCL 37.1101 ET SEQ.

69. The above paragraphs are incorporated by reference.

70. Defendant's discriminated against Plaintiff in the terms and conditions of his employment, including but not limited to refusing reasonable accommodations requested, and terminating Plaintiff's employment because Plaintiff requested reasonable accommodation.

71. The aforementioned actions deprived Plaintiff of his right to oppose said unlawful practices, in violation of the PDCRA.

72. Defendants, through their employees, agents, managers, and/or assigns retaliated against Plaintiff because Plaintiff requested reasonable accommodation for his disability under the PDCRA.

73. Defendants conducted themselves with malice or reckless indifference to Plaintiff's state protected rights.

74. As a direct and proximate result of Defendants' discrimination on the basis of disability, Plaintiff has suffered lost wages, benefits and loss of employment opportunities.

75. As a direct and proximate result of Defendants' failure to make reasonable accommodation to Plaintiff, Defendants have caused or continue to cause Plaintiff to suffer substantial damages for pecuniary losses, mental losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

### COUNT V
### CONVERSION
### MCL 600.2919

76. The above paragraphs are incorporated by reference.

77. Plaintiff at all relevant times maintained a personl laptop computer which he used for both business and personal use.

78. Upon Plaintiff's termination, Plaintiff requested of Defendants that he be permitted to obtain his personal information including but not limited to family photos, videos, and personal financial documentation from the laptop computer.

79. Defendants represented to Plaintiff that he would be permitted to obtain his personal information but later refused him the opportunity to do so.

80. Plaintiff has repeatedly, both orally and in writing, requested his personal effects.

81. Defendants have, both expressly and by silence, refused to return Plaintiff's personal effects.

82. Defendants have unlawfully taken and asserted dominance over Plaintiff's personal effects.

83. The acts described above constitute an unlawful conversion of Plaintiff's property.

## COUNT VI
## BREACH OF CONTRACT
## MICHIGAN COMMON LAW

84. The above paragraphs are incorporated by reference.

85. Plaintiff and Defendant Campbell Grinder entered into an Employment Agreement on December 30, 2010 for a term of five years.

86. Defendant agreed to compensate Plaintiff in the amount of $189,000.00 per annum.

87. On January 23, 2012, Plaintiff was terminated without cause.

88. Pursuant to the terms of the Employment Agreement, Plaintiff is entitled to severance in the amount of at least $378,000.00.

89. To date, Defendants have not provided Plaintiff with said severance, constituting a breach of contract between the parties.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## MICHIGAN COMMON LAW

90. The above paragraphs are incorporated by reference.

91. Plaintiff, by and through his attorneys, requested return of his personal effects from Defendants, explaining to Defendants that it was of paramount importance that his belongings be returned.

92. On or about March 15, 2012, Defendant returned to Plaintiff a small and select portion of his personal belongings via home delivery, and to date has refused to return the balance of his personal belongings.

93. The aforementioned actions, acts and/or omissions of Defendants, including, but not limited to, refusing to return Plaintiff's personal effects to Plaintiff, despite repeated requests and communications to Defendants as to the importance of the personal effects being withheld, constituted malicious and/or intentional actions that Defendants knew or should have known would cause Plaintiff severe distress and anxiety, humiliation and embarrassment, both emotionally and financially, and constitute a violation of Michigan common and/or statutory law.

94. As a direct and proximate result of the aforementioned actions and inactions by Defendants, Plaintiff has sustained injuries including physical pain and suffering, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of his personal life, loss of enjoyment of the ordinary pleasures of living, and loss of earnings, social security, fringe benefits, applicable seniority, raises, bonuses and opportunities for training and promotions.

## DAMAGES

95. The above paragraphs are incorporated by reference.

96. As a direct and/or proximate result of the unlawful employment and other practices described above, Plaintiff Mark Butler has suffered the indignity of disability discrimination and the invasion of his right to be free from discrimination and humiliation.

97. As a direct and proximate result of the unlawful employment and other practices described above, Plaintiff Mark Butler has suffered physical pain and suffering, mental anguish, outrage, embarrassment, damaged reputation and disruption of his personal and working life, loss of self-esteem, loss of job satisfaction, and loss of the ordinary pleasures of everyday living.

98. As a direct and proximate result of the unlawful employment and other practices described above, Plaintiff Mark Butler has been deprived of wages past and prospective, income and other employment benefits, including but not limited to, prospective retirement benefits, holiday and vacation pay and other promotional and fringe benefits of said employment, and has additionally been subjected to mental and financial distress and anxiety, and/or other damages known or unknown.

## CONCLUSION

**WHEREFORE**, Plaintiff Mark Butler seeks all appropriate damages arising out of law, equity and fact for each or all of the above causes of action, where applicable, and hereby requests the trier of fact, be it judge or jury, to award to the Plaintiff all applicable damages, including but not limited to compensatory, exemplary and/or punitive and all other relief arising out of law, equity, and fact also including but not limited to:

a. Compensatory damages in the form of past and future losses, including but not limited to prospective retirement benefits, holiday and vacation pay and other promotional and fringe benefits in the amount as the jury and/or trier of fact deems appropriate, equitable and just under the circumstances;

b. Exemplary and/or punitive damages against the Defendant in the amount as the jury and/or trier of fact deems appropriate, equitable and just under the circumstances;

c. Such other relief as may be applicable according to statutory and common law, including interest, costs and attorney fees.

Dated: April 11, 2013         By:   /s/ Stephen R. Drew
                                    Stephen R. Drew (P24323)
                                    Adam C. Sturdivant (P72285)
                                    DREW, COOPER & ANDING
                                    Attorneys for Plaintiff
                                    80 Ottawa Avenue NW, Suite 200
                                    Grand Rapids, Michigan  49503
                                    Phone: (616) 454-8300
                                    E-mail: sdrew@dca-lawyers.com
                                    E-mail: asturdivant@dca-lawyers.com

## JURY DEMAND

Plaintiff Mark Butler, by and through his attorneys DREW, COOPER & ANDING, demands a jury on all claims set forth above.

Dated: April 11, 2013         By:   /s/ Stephen R. Drew
                                    Stephen R. Drew (P24323)
                                    Adam C. Sturdivant (P72285)
                                    DREW, COOPER & ANDING
                                    Attorneys for Plaintiff
                                    80 Ottawa Avenue NW, Suite 200
                                    Grand Rapids, Michigan  49503
                                    Phone: (616) 454-8300
                                    E-mail: sdrew@dca-lawyers.com
                                    E-mail: asturdivant@dca-lawyers.com